The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBERT RYAN POWELL,

Defendant.

NO. CR15-244-RAJ

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Catherine L. Crisham and Amy Jaquette, Assistant United States Attorneys for said District, hereby files this Sentencing Memorandum in the above-captioned case. Sentencing is scheduled for Friday, October 28, at 10:00 a.m.

The United States asks this Court to impose a term of imprisonment of 292 months, to be followed by fifteen years of supervised release.

## FACTUAL BACKGROUND

On June 24, 2016, a jury found Defendant Robert Ryan Powell guilty of Transportation of a Juvenile (C.C.) with Intent to Engage in Prostitution, in violation of 18 U.S.C. §2423(a) (Count One); Transportation of a Juvenile (N.C.) with Intent to

1  Engage in Prostitution, in violation of 18 U.S.C. §2423(a) (Count Two); and Sex

2  Trafficking of B.M. by Force, Fraud, and Coercion, in violation of 18 U.S.C. §1591(a)(1)

3  and (b)(1) (Count Three).  The jury found the Defendant not guilty of transporting B.M.

4  in interstate commerce through coercion and enticement for the purpose of prostitution

5  (Count Four).

6        The government adopts the statement of facts set forth in the Presentence Report.

7  Additionally, the government relies upon the testimony and evidence offered at trial in

8  this matter, with which the Court is familiar.  In summary, this testimony and evidence

9  demonstrated that Defendant Robert Powell, a longtime pimp known as "Fresh" or

10  "Fresh the P," targeted young, vulnerable women and juveniles.  The Defendant then

11  recruited, manipulated, and – in the case of B.M. – used force, fraud and coercion to

12  compel, them to work as prostitutes for him.

13  **A.    Initial Recruitment of B.M.**

14        The evidence at trial showed that in early 2014, the Defendant attempted to recruit

15  B.M. by texting the phone number listed on a prostitution advertisement she had posted

16  on Backpage.com.  At the time, B.M. was living in Seattle and supporting herself by

17  working as a prostitute.  The Defendant, who had recently been released from prison for

18  assaulting a prostitution client of a previous victim, was living in Las Vegas.  B.M.

19  declined the Defendant's initial attempts to recruit her, but the Defendant continued to

20  send her text messages asking her to come to Las Vegas and work for him.  After several

21  weeks, B.M. eventually agreed to go to Las Vegas.  B.M. testified that it was her

22  understanding, based upon her conversations with the Defendant and her knowledge of

23  how the prostitution industry works, that she would be required to give him all of her

24  prostitution earnings.

25        In February 2014, B.M. sent money to the Defendant via Western Union, and he

26  then used that money to buy her a plane ticket to fly to Las Vegas.  On B.M.'s first

27  evening in Las Vegas, the Defendant slapped her after she jokingly touched his arm.  The

28  slap left a mark, and B.M. became frightened of the Defendant.  The Defendant then

GOVERNMENT'S SENTENCING MEMORANDUM - 2
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  instructed B.M. to post a prostitution advertisement on Backpage.com and to walk the

2  prostitution "track."  Within hours, B.M. was arrested on an outstanding warrant for

3  being a minor in a casino.  She called the Defendant, who refused to bail her out.  After

4  she was released, B.M. contacted her mother to help her return to Seattle.  Southwest

5  Airlines records confirmed that B.M.'s mother paid for her to fly from Las Vegas to

6  Seattle on March 3, 2014.

7  Once B.M. was back in Seattle, the Defendant continued to communicate with her

8  and attempt to convince her to come back to Las Vegas and work for him.  B.M. testified

9  that in trying to convince her to return, the Defendant told her that he would not hit her or

10  be aggressive again, and that it would be a better experience for B.M.  Based upon

11  these promises, B.M. eventually agreed to return to Las Vegas to work for the Defendant.

12  After arriving in Las Vegas in June, B.M. continued to work for the Defendant as

13  a prostitute.  Although the Defendant had promised B.M. that he would not hit or be

14  aggressive with her again, he was in fact physically and emotionally abusive on a number

15  of occasions.  Among other things, the Defendant made B.M. work every day and often

16  accompanied her to the track to watch her and make sure she was trying to get customers.

17  The Defendant also told B.M. what type of outfits she had to wear (short skirts and high

18  heels) and made her follow various "rules," including that she only engage in certain

19  types of sexual activities and that she not talk to or engage in commercial sex acts with

20  African-American men.  B.M. gave all of the money she earned from prostitution dates to

21  the Defendant.  B.M. testified that she was frightened of the Defendant, and what he

22  might do to her, if she refused to work for him as a prostitute.  B.M. said that she had no

23  choice as to whether she would work as a prostitute, and that there were many times

24  when she told the Defendant she felt sick or just did not want to work.  According to

25  B.M., the Defendant did not care, but told her that she had to go out and earn him "some

26  money."  B.M. also testified that she and the Defendant had a sexual relationship, and

27  that she eventually developed romantic feelings for him.

28

GOVERNMENT'S SENTENCING MEMORANDUM - 3
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

B.M. testified that she initially worked for the Defendant in Las Vegas and arranged prostitution dates either by posting on Backpage.com or by walking the track on Tropicana Avenue. The Backpage.com advertisements were posted by either by her or the Defendant. The Defendant gave B.M. prepaid credit cards, which he bought with her prostitution earnings, to pay for her online advertisements. The government introduced records from Backpage.com that confirmed that a number of advertisements featuring B.M. were posted in the Las Vegas market between June 30 and July 16, 2014.

At some point in July 2014, business became slow in Las Vegas, and the Defendant told B.M. that he wanted to take her to other states to prostitute. B.M. testified that the Defendant rented a car from a business called Charlie Cheap Car and drove her to Arizona, New Mexico, Utah, Idaho, and back to Nevada to work as a prostitute by advertising on Backpage.com. B.M. testified that she worked as a prostitute in each of these states, and gave all of her earnings to the Defendant. To corroborate B.M.'s testimony, the government introduced records from Charlie Cheap Car showing that on July 18, 2014, the Defendant rented a Chevy Cobalt for several weeks, as well Backpage.com records showing that between July 22 and August 13, prostitution advertisements featuring B.M. were posted on Backpage.com in the Phoenix, Flagstaff, Albuquerque, Tucson, Las Vegas, Salt Lake City, and Boise markets. The government also introduced hotel records showing that Powell had rented rooms in some of those states during that time frame.

After this multi-state trip, B.M. had earned enough money for the Defendant to buy himself a car. They traveled to California with one of the Defendant's "pimp partners," who knew where the Defendant could place a down payment on a car. The Defendant used B.M.'s prostitution earnings to put $3,000 down on the purchase of a silver BMW.

**B.     The Defendant Takes B.M. to Seattle and Recruits C.C. and N.C.**

After taking possession of the BMW, the Defendant told B.M. that he wanted to take her to Seattle to work as a prostitute. B.M. testified that the Defendant rented a

GOVERNMENT'S SENTENCING MEMORANDUM - 4
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    room at the Studio 6 Motel in Mountlake Terrace, Washington, where she posted

2    advertisements on Backpage.com and did prostitution dates.  The government introduced

3    corroborating records from Backpage.com showing that B.M. was advertised online in

4    the Seattle area during this time frame, as well as records from the Studio 6 Motel that

5    show that the Defendant rented room 269 from August 18 through August 21.  The

6    vehicle listed on the hotel registration was a gray BMW.

7         While in Seattle, B.M. felt too sick to work regularly.[1]  B.M. testified that the

8    Defendant was angry that she was not earning enough money for him as a prostitute and

9    that he told her that he was going to attempt to recruit some other females to work for

10   him through Backpage.com.  The Defendant subsequently called her and told her that he

11   had found two recruits and was bringing them to the Studio 6 motel.

12        Victim C.C. testified that on August 20, 2014, the Defendant sent her a friend

13   request on the social networking site Tagged.com under the username "Too Fre$h."  The

14   next day, C.C. was walking the prostitution "track" on Aurora Avenue in Seattle when

15   the Defendant pulled up next to her in a silver BMW and began talking to her.  The

16   Defendant told C.C. that he recognized her because he had recently sent her a friend

17   request on Tagged.com, and invited her to take a ride with him.  C.C. agreed to do so.

18   C.C. also introduced her friend N.C. to the Defendant, and the three of them hung out and

19   drove around in his BMW.  At the time, C.C. was seventeen years old and N.C. was

20   sixteen years old.

21         At some point, the Defendant asked C.C. if she was into "making money," which

22   she testified she knew meant to work as a prostitute.  The Defendant also told C.C. that

23   he knew she was a prostitute because he had seen her advertisement next to an

24   advertisement his "female" had posted on Backpage.com.  The Defendant told the

25   juveniles that he and his "female" were planning on taking a road trip to California, and

26   _____

27   [1]

28

GOVERNMENT'S SENTENCING MEMORANDUM - 5
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

invited them to come along.  Both C.C. and N.C. testified that they were aware from the Defendant's statements that he was a pimp and that his "female" worked for him as prostitute.

C.C. and N.C. testified that the Defendant then took them to the Studio 6 motel, where they met B.M.  Both juveniles testified that the Defendant referred to B.M. as his "female" or "bitch" and spoke of how she earned money for him as a prostitute.

B.M. corroborated that the Defendant introduced her to C.C. and N.C. at the Studio 6 motel, and that he subsequently told her that he was going to take them to California to prostitute.  B.M. got into an argument with the Defendant, and told him that she was going to go to her mother's house instead of traveling to California.  B.M. testified that the Defendant initially told her she could not leave.  He began throwing shoes and clothes at her, telling her that the only way she was going to leave was if she walked out the door "butt naked."  The Defendant eventually drove B.M. to an area near where her mother lived and dropped her off in a parking lot, but refused to let her take her phone or new clothes, both of which had been purchased with money she earned from doing commercial sex acts at the Defendant's direction.  B.M. then went to stay with her mother for approximately six weeks.

While at the Studio 6 motel, the Defendant rented another room for C.C. and N.C. He told them that they should set up some prostitution dates and "break off" some of the money they earned to give to him.  The Defendant also gave B.M.'s phone to C.C. and told her that he wanted her to set up dates with potential customers who were responding to B.M.'s Backpage.com advertisements.  Both C.C. and N.C. testified that they engaged in commercial sex acts at the hotel.  Studio 6 records confirmed that on August 21, 2014, the Defendant rented Room 218 for one night.

C.      **Transportation of C.C. and N.C. to California**

After spending the night at the Studio 6 motel, the Defendant took C.C. and N.C. to San Jose, California.  They drove straight through from Seattle in the Defendant's silver BMW.  C.C. and N.C. testified that they understood that they would be engaging in

GOVERNMENT'S SENTENCING MEMORANDUM - 6
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  commercial sex acts while in California, although they also hoped to relax and enjoy
2  themselves.

3       C.C. testified that at some point during the drive, when N.C. was sleeping, the
4  Defendant began talking with her about C.C. continuing to work for him as a prostitute.
5  He said that he and B.M. had traveled to many different cities and earned a lot of money,
6  and that he and C.C. could do the same thing.

7       C.C. and N.C. both testified that they arrived in San Jose later the next day and the
8  Defendant rented two rooms at the San Jose Airport Garden Hotel.  Although they
9  initially spent time swimming in the hotel pool, the Defendant soon became aggressive
10  towards C.C. and N.C, demanding that they go out on the streets and find dates on the
11  track.  He told C.C. and N.C. they had to work because he was broke and warned that
12  they would have to sleep outside unless they earned money through prostitution.  C.C.
13  and N.C. testified that although they expected to post advertisements on Backpage.com,
14  they did not want to walk the track.  The Defendant responded that he had heard that
15  Backpage.com was "slow" in San Jose, and insisted that they walk the track.

16       Later the first night, the Defendant drove C.C. and N.C. to the track.  Prior to
17  dropping them off, the Defendant told C.C. and N.C. his rules, which included keeping
18  their heads down and not talking to African-American men.  The Defendant also insisted
19  that C.C. wear extremely uncomfortable high heels while walking.  While C.C. and N.C.
20  were at the track, the Defendant drove around the area and watched them to make sure
21  they were attempting to get dates.  The Defendant made C.C. and N.C. stay at the track
22  until 3 or 4 a.m., when he finally drove them back to the motel to sleep.  The jury also
23  heard testimony from B.M., who stated that she spoke on several occasions with the
24  Defendant while he was in San Jose.  During these conversations, the Defendant
25  complained about how much money the juveniles were earning and said that one of the
26  girls was complaining about having to walk the track in high heels.  B.M. said that the
27  Defendant told her that he was thinking of leaving them in California.
28

GOVERNMENT'S SENTENCING MEMORANDUM - 7
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Both juveniles testified that the next day, the Defendant decided that they should switch hotels.  The government introduced business records from the Hotel Elan which confirmed that Robert Powell rented room 116 on August 24, 2014, and checked out the next day.  C.C. and N.C. testified that after checking into this hotel, the Defendant took them both to the track and told them to find prostitution dates. C.C. and N.C. testified that during their trip to San Jose, they each conducted several prostitution dates and gave most of their earnings to the Defendant.  The Defendant was angry at the amount of money they gave him, and told C.C. that he knew she could be earning more.  N.C. also testified about a frightening incident in which she and C.C. were stuck in a house with numerous males, and C.C. was alone in a room with one male and N.C. had to get her out.

Both juveniles testified that on their last night in San Jose, the Defendant bought the juveniles some marijuana.  N.C. testified that the marijuana was extremely potent, and that the Defendant was encouraging them to smoke large amounts.  They eventually passed out, and woke up the next morning to find that the Defendant's suitcase, belongings, and car were gone.  Both juveniles testified that C.C. checked her cell phone and saw that the Defendant had sent her a text message that said, "You hoes have been fired."  Oakland Police Department Officer Michael Fox testified that the next day, he conducted a traffic stop in the early morning hours on a silver BMW driven by the Defendant.  Officer Fox stated that he stopped the Defendant approximately forty miles from the Hotel Elan, driving along a known prostitution track in Oakland.

**D.      Continued Trafficking of B.M.**

After leaving California, the Defendant got back in touch with B.M., who was living in Seattle, and asked her to come back to Las Vegas to work for him as a prostitute. B.M. initially resisted, telling him that she was working at Starbucks.  The Defendant continued to contact her, however, and in mid-November, B.M. flew United Airlines to join the Defendant in Las Vegas.  At the Defendant's behest, she conducted prostitution dates in Las Vegas, Arizona, New Mexico, and Utah and provided all of her earnings to

1   the Defendant.  During this time, the Defendant continued to be emotionally and

2   physically abusive to her, and pressured her to engage in commercial sex acts and give

3   him the money she earned.  The government presented hotel records and Backpage.com

4   advertisements from this time frame to corroborate B.M.'s testimony.

5       When B.M. returned from one of her out-of-state trips, the Defendant told her that

6   he had recruited another woman, R.B., to work for him as a prostitute.  The Defendant

7   said that he had seen R.B. on the Las Vegas track, approached her, and convinced her to

8   work for him.  In early January, the Defendant told B.M. and R.B. that he wanted to take

9   them to different states to prostitute.  B.M. will testify that the Defendant drove her and

10  R.B. to New Mexico and Colorado, where they posted advertisements on Backpage.com,

11  engaged in commercial sex acts, and gave the money they earned to the Defendant.  On

12  January 12, 2015, the Defendant took B.M. and R.B. to Rapid City, South Dakota, where

13  he rented room 132 at a Motel 6.  Prostitution advertisements featuring B.M. and R.B.

14  were posted on Backpage.com's Rapid City board, and each woman did at least one date

15  there.

16      On January 13, 2015, Rapid City Police Department (RCPD) officers prepared to

17  conduct a prostitution sting after seeing B.M.'s advertisement on Backpage.com.  RCPD

18  Detective Kelvin Masur called the number on the advertisement and arranged a

19  prostitution date with B.M.  Officers drove to the Motel 6, where they encountered a man

20  leaving the vicinity of room 132.  Officers interviewed the man, who admitted that he had

21  had consensual sex with a woman in the hotel and provided a "tip."  Soon thereafter,

22  surveillance officers saw the Defendant and R.B. drive through the Motel 6 parking lot.

23  Officers detained the Defendant and R.B. and seized a cell phone and several electronic

24  devices from the vehicle.  Officers then contacted B.M. as she left the hotel room.  B.M.

25  was subsequently interviewed by law enforcement officers and gave a statement

26  consistent with her testimony at trial.  B.M. told the officers that the Defendant had been

27  physically abusive with her, and showed them bruises on her leg where the Defendant

28  had beaten her after she told him she felt too ill to prostitute.

GOVERNMENT'S SENTENCING MEMORANDUM - 9
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Law enforcement officers also applied for and received a warrant to search room

2    132.  Among other things, they found evidence of prostitution activity, as well as two cell

3    phones – a black LG cell phone that the Defendant admitted belonged to him, as well as a

4    ZTE TracFone that B.M. said belonged to her but was often used by the Defendant to

5    communicate with her.  RCPD Detective Kelvin Masur conducted a forensic/digital

6    examination of these phones, as well as a Samsung SGH-T999 belonging to B.M.  Each

7    of these phones contained evidence of the Defendant's involvement in sex trafficking and

8    interstate transportation for the purpose of prostitution.  Among other things, the phones

9    contained text messages from the Defendant to a "pimp partner" bragging that he would

10   post B.M. and R.B. on Backpage.com whether they liked it or not because "they ain't got

11   no choice if they're fucking with me."

## PRESENTENCE REPORT AND ADVISORY GUIDELINES RANGE

12   The Presentence Report accurately summarizes the offense conduct in this case, as

13   well as the Defendant's criminal history category.  The government respectfully submits

14   that the total offense level, and resulting advisory Guidelines range, should be calculated

15   as follows:

16

17

18   **1.    Counts One and Two (Transportation of C.C. and N.C. for the Purpose of Prostitution)**

19   The government agrees with the Probation Office that the correct base offense

20   level for Counts One and Two is 28, pursuant to Section 2G1.3(a)(3) of the United States

21   Sentencing Guideline (USSG).  The government also believes that the following

22   enhancements should be applied with respect to both counts:

23   **a.    Undue Influence of Minor**.  The government agrees with the

24   Probation Office that a two-level increase, pursuant to USSG Section 2G1.3(b)(2)(B),

25   should be applied because Defendant "unduly influenced a minor to engage in prohibited

26   sexual conduct."  The commentary to Section 2G1.3 states that in a case, such as this one,

27   "where a participant is at least 10 years older than the minor, there shall be a rebuttable

28   presumption that [this] subsection applies.  In such a case, some degree of undue

influence can be presumed because of the substantial difference in age between the participant and the minor." Here, the Defendant was 33 when he trafficked sixteen-year-old C.C. and seventeen-year-old N.C. This enormous age difference, on its own, is sufficient to establish that Defendant unduly influenced C.C. and N.C. to prostitute for him. Furthermore, the evidence at trial made clear that both C.C. and N.C. told the Defendant that they did not want to walk the track in San Jose and repeatedly asked him to let them go back to the hotel. The testified that the Defendant refused to do so, but instead made them continue to walk the track until they had earned a certain amount of money. Both C.C. and N.C. testified that they were frightened and without money or a support system in a city they had never visited, and thus felt like they had no choice but to accede to the Defendant's demands. This evidence demonstrates that the Defendant "unduly influenced" both juvenile victims to engage in prostitution. Accordingly, the two-level increase is appropriate.

       **b.**    **Use of a Computer.** The government respectfully submits that the Court should impose a two-level increase, pursuant to USSG Section 2G1.3(b)(3)(B), because the crimes involved the use of a computer to "persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct" and to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor." Upon learning that B.M. was too ill to work as a prostitute and wanted to return to her mother's home, the Defendant used a computer to recruit her replacements. Specifically, the Defendant recruited C.C. first by identifying her on Backpage.com and then sending her a friend request on Tagged.com. It is clear that the purpose of this friend request was to recruit C.C. as a prostitute. Indeed, the day after sending the friend request, the Defendant trolled the "track" on Aurora Avenue until he spied C.C. walking and then pulled up to talk to her. Both C.C. and N.C. testified that soon after introducing himself to them, the Defendant asked them if they were into "making money," asked them if they wanted to join him and his "female" on a trip to California, and brought them to the Studio 6 motel to work as prostitutes. Such conduct clearly involves the "use of a

GOVERNMENT'S SENTENCING MEMORANDUM - 11
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

computer" to "persuade, induce, entice, [and] coerce" minors C.C. and N.C. to engage in commercial sex acts.

In addition, both C.C. and N.C. testified that while at the Studio 6 motel in Mountlake Terrace, the Defendant directed them to use Backpage.com to engage in prostitution dates and "break off" some of the money they earned to give to him.  The Defendant also gave B.M.'s phone to C.C. that evening and told her that he wanted her to set up dates with potential customers who were responding to B.M.'s Backpage.com advertisements.  C.C. and N.C. both testified that they engaged in commercial sex acts at the Studio 6.  The fact that no Backpage.com advertisements appear to have been posted for C.C. and N.C. that evening does not compel a different result – both juveniles testified that the Defendant told them to get dates through Backpage.com and that they did indeed engage in commercial sex acts that evening.  Accordingly, for both of these reasons, the enhancement should be applied.

c.   **Commission of a Sexual Act.**  The government agrees with the Probation Office that a two-level increase, pursuant to USSG Section 2G1.3(b)(4)(A), should be applied, because the offense involved the commission of a sexual act – namely, the multiple commercial sex acts that C.C. and N.C. engaged in at the Defendant's direction.

d.   **Role in the Offense.**  The government respectfully disagrees with the Probation Office that a two-level enhancement, pursuant to USSG Section 2G1.3(b)(4)(A) should be applied because the Defendant was an organizer, leader, manager, or supervisor in a prostitution ring.  While the government disagrees with the defense's contention that a "victim" cannot also be a "participant" in criminal activity, *See United States v. Causey*, 2014 U.S. App. LEXIS 5843, *27-28 (7th Cir. Mar. 28, 2014) (counting as a "participant" under 3B1.1 a victim who was recruited and directed by the Defendant and was complicit in a mortgage fraud scheme) ("That she was also a victim does not prevent her from being a 'criminally responsible' party for sentencing purposes"), the facts of this case do not establish that B.M., C.C. and N.C. were

GOVERNMENT'S SENTENCING MEMORANDUM - 12
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"participants" in the criminal activity.  *Compare United States v. Walls*, 11CR5408-RJB (leadership enhancement applied where evidence at trial established that Defendant directed his mother to conceal and house victims while they were being trafficked by him); *United States v. Ross*, 492 Fed. App. 808 (9th Cir. 2012) (affirming application of leadership enhancement where district court found that defendant directed another individual to pay for the bus tickets and hotel rooms of his minor trafficking victims which were "to be used for both their accommodations and for their work").  Because the Defendant did not direct B.M., C.C., or N.C. to take any actions to further his prostitution business other than engaging in commercial sex acts, the government submits that this enhancement is not appropriate.

Applying these enhancements, the adjusted base offense level for Counts One and Two is 34.

**2.      Count Three (Sex Trafficking of B.M. through Force, Fraud, and Coercion)**

The government agrees with the Probation Office that the base offense level for Count Three is 34, pursuant to Section 2G1.1(a)(1).  For the reasons set forth above, the government does not believe that an enhancement under Section 3B1.1(c) is warranted.

**3.      Multiple Count Adjustment**

The government agrees with the Probation Office that a three-level increase, pursuant to Section 3D1.4, is appropriate because the offense involved multiple counts of conviction involving three different victims.

**4.      Acceptance of Responsibility.**   The government agrees that Defendant does not qualify for a downward adjustment for acceptance of responsibility.  As set forth in Application Note 2 to Section 3E1.1, Defendant does not qualify for this adjustment because he put the government to its burden of proof at trial by denying the essential factual elements of guilt.  In addition, Defendant has not expressed remorse or contrition for his conduct.

These calculations result in a total offense level of 37.  With a criminal history category of V, this results in an advisory guidelines range of 324 to 405 months.  The

GOVERNMENT'S SENTENCING MEMORANDUM - 13
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   mandatory minimum sentence required by Counts One and Two is 120 months and the

2   mandatory minimum sentence required by Count One is 180 months.

3   ## SENTENCING RECOMMENDATION

4   The government respectfully asks this Court to sentence Defendant to a term of

5   imprisonment of 292 months, to be followed by a fifteen-year term of supervised release.

6   This sentence, which is below the low end of the advisory Guidelines range as calculated

7   by the government and the Probation Office, is appropriate in light of the predatory and

8   exploitative nature of Defendant's conduct, his criminal history and longtime

9   involvement in prostitution, and the need to protect the public from Defendant's crimes.

10   The government notes that 18 U.S.C. § 3553(b)(2) specifically states that when

11   sentencing a defendant under Section 1591, a sentencing court "shall impose a sentence

12   of the kind, and within the range, referred to in [the advisory Sentencing Guidelines]

13   unless" the sentencing court finds that certain aggravating or mitigating circumstances

14   exist, or if the government has filed a motion acknowledging substantial assistance by the

15   defendant. *See* 18 U.S.C. § 3553(b)(2).  The government submits that only one such

16   mitigating circumstance exists here, and that is the fact that the longest sentence the

17   Defendant has served thus far is 72 months.  The government submits that the seriousness

18   of Defendant's conduct, and his prior convictions for pimping-related offenses, warrants

19   a sentence 32 months below the low end of the advisory Guidelines range.  In particular,

20   the following Section 3553(a) factors support the government's recommendation:

21   **A.   Nature and Circumstances of the Offense**

22   As set forth above, Defendant exploited three extremely vulnerable individuals to

23   satisfy his own desire for control over his victims and for his own financial benefit.

24   B.M. is an extremely troubled young woman who suffers from an incredible lack of self-

25   esteem and an intense desire to be loved and accepted.  Defendant seized upon B.M.'s

26   emotional vulnerabilities to exploit her.  He used false professions of "love" and

27   occasional demonstrations of affection to manipulate her into selling her body to earn

28   him money.  He ignored B.M.'s pleas to not make her walk the track or go to a strange

GOVERNMENT'S SENTENCING MEMORANDUM - 14
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

city to prostitute, instead calling her names, throwing objects at her, and telling her she needed to earn him money. Even when B.M. was arrested doing prostitution dates at his instruction, he refused to bail her out. Defendant isolated B.M. physically and emotionally form any support system and made her entirely dependent on him for money, food, and companionship.

Similarly, Defendant treated C.C. and N.C. as nothing more than commodities to earn him money. He sought them out, convinced them to come with him to California, where they had no support structure or chance to escape, and gave them no choice but to walk the track and earn him money. When they did not earn enough money for him, he left them stranded in a hotel room in San Jose, with nothing but a text message that "you hoes have been fired."

The seriousness of Defendant's crimes is magnified by his use of physical, mental, and emotional coercion to prey upon and control his victims. He put them in danger every day he used them – forcing them into being completely vulnerable with strange men who could arrest them or rape them. He treated them like they were nothing more than "hoes" and "bitches" who had no worth and no dignity, and whose sole purpose was to make him money. He talked derisively about them to his "pimp partners" and bragged that the victims had no choice in whether to engage in prostitution acts.

The Court heard all three victims testify at trial about being trafficked by Defendant. B.M. and C.C., in particular, gave a heart wrenching accounts of Defendant's exploitation of them. As a result of their victimization by Defendant, all three victims have suffered significant trauma – trauma that they were forced to revisit during their testimony at trial. A significant sentence of 292 months is necessary to account for the severity and extent of Defendant's crimes.

**B.** **Defendant's Personal History and Characteristics/Need to Protect the Public**

Defendant's background and criminal history further justifies the government's recommended sentence. Unlike many defendants who appear before this Court, the Defendant grew up in a stable, supportive household with parents who loved him and

provided for his emotional, physical, and spiritual needs. The government does not doubt that the Defendant's loss of his father as a teenager shattered his world and caused tremendous hurt and loss. Nevertheless, the loss of a parent is not an excuse for the type of behavior the Defendant engaged in. He bears ultimate responsibility for his conduct and the criminal actions he has engaged in as an adult. Defendant is a manipulative and exploitative person who has supported himself with the prostitution profits of his victims. Throughout his adult life, Defendant has exhibited nothing other than utter disregard for the law and a complete lack of respect for women. Defendant's conduct as an adult – and the trauma and pain that conduct has inflicted on others – weighs in favor of a significant sentence.

The Defendant's conduct and criminal history makes clear that he is a predatory person, who has spent most of his adult life living off the prostitution profits of vulnerable juveniles and young women. Indeed, the government introduced evidence at trial of Defendant's prior convictions that showed that he had previously manipulated numerous other women into working for him as prostitutes and providing him with their earnings. Based upon his past choices, there is a strong likelihood that Defendant will revert to this type of conduct when he is released from prison. Defendant's history suggests that he poses a very real danger to the community and that he will likely continue to sexually exploit women upon his release. Accordingly, a significant sentence of 292 months is warranted.

The government also agrees with the Probation Office that a fifteen-year term of supervised release is appropriate. Defendant is not only a sex trafficker, but he is a sex trafficker who preys upon young, vulnerable girls and women. An examination of his personal characteristics and criminal history makes clear that he knows nothing other than a lifestyle in which he preys upon women to financially support him. While it is true that he will be in his 50s when he is released from prison, it seems likely that he will pose just as much of a danger to his community then as he does now. Given the heinousness of Defendant's crimes, as well as his troubling tendency to recruit and exploit young girls

GOVERNMENT'S SENTENCING MEMORANDUM - 16
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and women, a significant term of supervised release is necessary to protect the

2   community.

3   **C.     The Need for Adequate Deterrence to Criminal Conduct**

4          The sentence in this case must be severe enough to deter Defendant and others

5   from weighing the costs of a lenient sentence versus the benefits of having young women

6   work for them as prostitutes.  There is a strong need to deter this type of exploitation of

7   vulnerable young women who are forced into sex trafficking.  Stiff penalties are

8   necessary to discourage individuals from using emotional and physical coercion to force

9   and manipulate women into sexual slavery.  A sentence of 292 months will serve this

10  goal.  Citizens of this district are entitled to know that individuals who exploit vulnerable

11  teenage girls, and manipulate them into working as prostitutes, will suffer consequences

12  commensurate with their conduct.  More importantly, the sentence must be significant

13  enough to convince Defendant that his victimization of women will not be tolerated and

14  that he cannot support himself through prostitution.  This is particularly true where

15  Defendant has been undeterred by his two prior prostitution-related convictions for

16  attempted pandering and assault with a deadly weapon, the last of which resulted in a six-

17  year sentence.  Moreover, Defendant was released from his last prison term in November

18  2013 and returned to his prior ways within months, attempting to recruit B.M. in early

19  2014.  Defendant's persistent exploitative behavior requires a significant sentence.

20  **D.     Need to Avoid Unwarranted Sentencing Disparities**

21         The Probation Office based its recommendation of 180 months in part by

22  reference to other sentences imposed in sex trafficking cases in this district.  The

23  government respectfully submits that other than the *Bonds* case, none of these cases is an

24  appropriate benchmark because the defendants in those cases did not go to trial, requiring

25  their victims to relive their exploitation through their testimonies.  Rather, more

26  appropriate comparisons are the sex trafficking cases in this district in which the

27  defendant has gone to trial.  Other than *Bonds*, those cases have resulted in sentences of

28  20 years or more.  *See, e.g., United States v. Jerome Todd* (26 years); *United States v.*

GOVERNMENT'S SENTENCING MEMORANDUM - 17
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *Alexander Walls* (23 years); *United States v. Juan Vianez* (20 years).  Furthermore, the

2  government respectfully submits that the *Bonds* case is not an accurate comparison, as the

3  Bonds case involved a significantly smaller time frame (several weeks) and did not

4  involve violence.  A sentence of 292 months is appropriate in light of the sentences that

5  have been imposed by other judges in this district.

6  <u>**CONCLUSION**</u>

7      For the foregoing reasons, the government respectfully requests that the Court to

8  impose a sentence of 292 months, to be followed by fifteen years of supervised release.

9      DATED this 27th day of October, 2016.

10

11                  ANNETTE L. HAYES
                     United States Attorney
12

13                  */s/ Catherine L. Crisham*
                     CATHERINE L. CRISHAM
14                  AMY JAQUETTE
15                  Assistant United States Attorneys
                     700 Stewart Street, Suite 5220
16                  Seattle, Washington 98101
17                  Phone: 206-553-8451
18                  Fax:    206-553-0755
                     E-mail: catherine.crisham@usdoj.gov
19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S SENTENCING MEMORANDUM - 18
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on October 27, 2016, I electronically filed the foregoing with

3  the Clerk of the Court using the CM/ECF system which will send notification of such

4  filing to the attorney of record for the defendant.

5

6                                              */s/ Lisa Crabtree*

7                                              LISA CRABTREE
                                               Paralegal
8                                              United States Attorney's Office

9                                              1201 Pacific Avenue, Suite 700
                                               Tacoma, Washington 98402
10                                             Telephone: (253) 428-3800

11                                             Fax: (253) 428-3826
                                               E-mail: Lisa.Crabtree@usdoj.gov
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S SENTENCING MEMORANDUM - 19
*United States v. Powell*, CR15-244 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970